(115 App. Div. 247)

WEINBERG et al. v. SCHRANK et al.

(Supreme Court, Appellate Division, First Department. November 5, 1906.)

VENDOR AND PURCHASER—FRAUDULENT SALES—LIENS—BONA FIDE PURCHASER.
    Plaintiff was induced by fraudulent representations to contract for the purchase of certain property from R. and to make a certain cash payment. R. was not the owner of the property, and, after the execution of the contract, he made a contract to purchase the property from M., acting as agent of L., who had acted at the same time as plaintiff's agent. M., however, had no title to the property, after which R. agreed to sell the same to defendants S. and L. for $2,100. At this time, S. employed an attorney to examine the title, who had been previously employed by all the parties with reference to plaintiff's contract, and who had knowledge of the fraudulent sale to plaintiff. R.'s contract with M. was thereafter assigned to defendant A., acting as agent for defendants L. and S.,

and thereafter defendant S. and wife acquired title through mesne conveyances and contracts from M. *Held*, that S., though chargeable with notice of the knowledge of his attorney with reference to the fraudulent sale to plaintiff, was nevertheless a purchaser in good faith, and his rights were not subject to an equitable lien in favor of plaintiff for the earnest money paid by plaintiff.

[Ed. Note.—For cases in point, see vol. 48, Cent. Dig. Vendor and Purchaser, § 591.]

Appeal from Special Term, New York County.

Action by Max Weinberg and another against Pincus Schrank and another impleaded with others. From a judgment in favor of plaintiffs, defendants appeal. Reversed, and new trial ordered.

Argued before PATTERSON, INGRAHAM, LAUGHLIN, HOUGHTON, and SCOTT, JJ.

Charles Goldzier, for appellants.

Milton Mayer, for respondents.

INGRAHAM, J. The facts as found by the Trial Court, and, upon which the judgment in favor of the plaintiff was entered, were as follows: On the 15th day of March, 1904, the plaintiffs entered into a contract with the defendant Becky Rubin, whereby the plaintiffs agreed to purchase, and the defendant agreed to sell and convey, certain premises in the city of New York; "that the plaintiffs agreed to pay therefor the sum of $22,000 of which they were to pay $3,000 in cash. and the balance by taking the property subject to mortgages then existing, and thereafter to be executed by the plaintiffs; that at the time of the execution of this contract the plaintiff paid to defendant Becky Rubin the sum of $1,250 in cash." At and prior to the execution of this contract, the defendants Rubin and Lavenberg represented to the plaintiffs that the property purchased yielded an annual income from the tenants occupying apartments therein of $2,400, and that the defendant Rubin was the owner of the said property, and that the plaintiffs executed the contract for the purchase of the said property, relying upon the said representations that the property yielded an annual income of $2,400; that the premises, at the time of the said representations, did not yield an annual income of $2,400, but that they did yield a rental of about $1,800 per annum; that these representations were false and fraudulent, and known to be so by the said defendants, and were made solely for the purpose of fraudulently inducing the plaintiffs to execute a contract for the purchase of the said premises.

By the contract, which was introduced in evidence, the deed was to be delivered on the 4th of April, 1904, at the office of the defendant Eugene Cohn and Julius Levy, No. 99 Nassau Street, New York City. The court found that on the 4th day of April, 1904, the plaintiffs attended the office of the defendant Cohn, No. 99 Nassau street, in the city of New York, and that at that time the defendant Rubin was not ready, able, and willing to deliver a deed of the said property, in that she had not acquired title thereto, and was not the owner of the premises in fee simple or otherwise; that on the 15th day of March. 1904, after the execution of the contract with the plaintiff, the defendant Rubin made a contract for the purchase of the said property with

100 N.Y.S.—51

one Minsky; that in making this contract with Minsky, Rubin acted
for the defendant Lavenberg who was her uncle, and who had acted
at the same time as the agent of the plaintiffs; that on the 29th day of
March the defendant Schrank, and the defendant Lavenberg, entered
into a contract with Rubin, whereby Rubin agreed to sell and Schrank
and Lavenberg agreed to purchase the property for the sum of $21,-
000; that on the 15th day of March, 1904, when the contract between
Rubin and the plaintiffs was made, Cohn and Levy, attorneys and
counsellors at law, acted for all of the parties as attorneys in drafting
said contract, and as attorneys for the plaintiffs in the examination of
the title to the property until about the 21st day of March, 1904, when
the plaintiffs discontinued the services of the said Cohn and Levy, and
on that day they were instructed not to act as attorneys or otherwise
for the plaintiffs; that on the 29th day of March, 1904, when the
contract between Rubin and the defendants Schrank and Lavenberg
was made, Cohn and Levy acted for all the parties in drafting the con-
tract; that at the time of the making of said contract Cohn knew
that the plaintiffs claimed that they had been induced to enter into
a contract with Rubin upon the representation that the said property
yielded an income of $2,400, and that the said representation was false
and untrue; that on the 4th day of April, 1904, the defendant Laven-
berg was served with a summons and complaint in an action commenced
by these plaintiffs at the office of Cohn, in which Lavenberg and
Rubin were charged with having made false and fraudulent represen-
tations, whereby they induced the plaintiffs to purchase the said
property and part with the sum of $1,250, and in which the plaintiffs
demanded that the property be charged with a lien to secure the said
sum of $1,250; that on the 5th and 6th days of April, 1904, while
acting as attorney for the defendants Lavenberg and Schrank in clos-
ing the title to said premises, and accepting a deed on behalf of said
Schrank and one John O'Brien, and while acting for and representing
the defendant Lavenberg, the said Cohn knew of the commencement
of the action by the plaintiffs, charging fraud and misrepresentation in
connection with and relation to the said property; that the contract
originally made by the defendant Rubin with said Minsky was as-
signed by her to the defendant Rosie Alexander who acted solely as a
representative of the defendants Lavenberg and Schrank; that on or
about the 18th day of May, 1904, the defendant Bertha Schrank pur-
chased of the defendant Lavenberg his interest in the said property, in
which transaction Cohn acted as attorney for her and Lavenberg,
and at that time Cohn knew of the fraudulent representations made by
Lavenberg and Rubin to the plaintiffs and of the commencement of an
action charging Rubin and Lavenberg with fraud; that the transfer
of the said property by Schrank to Cohn was without consideration,
and that the defendants Pincus Schrank and Bertha Schrank acquired
title to the said property through mesne conveyances and contracts
from one Solomon Mehrbach.

The court found as a conclusion of law that the contract made be-
tween Rubin and the plaintiffs on the 15th day of March, 1904, was in-
duced by fraud and should be rescinded; that the defendant Schrank

acquired title to the said property, chargeable with the knowledge that the plaintiffs had been defrauded by the defendants Lavenberg and Rubin as to the ownership of the said property, and as to the true rental thereof; that the plaintiffs were entitled to the return of the payment which they made in advance on the signing of the contract, to wit, the sum of $1,250, and interest thereon from the 15th day of March, 1904, and the court directed judgment for that sum, with costs and disbursements of this action, and that a certain sum of $1,750 deposited in this court under an order canceling the notice of the pendency of this action in lieu of the real property be impressed with a lien to the extent of the said judgment.

The only defendants who have appealed are Pincus Schrank and Bertha Schrank in whom the property is now vested. We must bear in mind that the defendant Rubin was not the owner of this property. All that she ever had was a contract of purchase made by Minsky, but he had no title to the property, but had a contract to purchase it from one Solomon Mehrbach. It seems that before this title was closed Rubin transferred her contract with Minsky to one Rosie Alexander; Canter who was the owner of the property conveyed to Rosie Alexander on the 4th of April. Alexander gave back the mortgage to Canter, and then conveyed the property to the defendant Pincus Schrank and O'Brien as tenants in common. Subsequently, on May 12, 1903, O'Brien executed and delivered to the defendant Pincus Schrank a deed conveying his undivided one-half interest to Schrank, the consideration recited being $100 and other consideration. Subsequently, on May 17, 1904, Pincus Schrank executed to Eugene Cohn a deed of the whole property, and subsequently, by a deed acknowledged on the 18th of May, 1904, Eugene Cohn and wife conveyed the property to the defendant Bertha Schrank.

So far as appears the defendant Schrank acted in entire good faith in the premises, and furnished the money necessary to complete the transaction. There is no evidence that he ever heard of the plaintiffs, their action or their claim against Rubin or Lavenberg. The right of the plaintiffs to recover from Lavenberg and Rubin is not disputed. The question is whether Schrank who, so far as appears, acting in good faith, purchased and paid for the property, must repay to the plaintiff a sum of money out of which Lavenberg has swindled him. There is no equity in favor of these plaintiffs as against defendants Schrank. Assuming that plaintiffs acted in entire good faith when they made the contract with Rubin to purchase the property in question, and established that they were induced to enter into the contract by fraud, and that they rescinded the contract, they had a claim against Rubin and Lavenberg for the damages that they had sustained, etc.; the contract having been rescinded would have a right to recover back the money that they had paid from the person to whom they had paid it, and in such an action might have been entitled to an equitable lien on such interest in the lands as the vendor had or subsequently acquired. But neither the vendor nor Lavenberg had at the time that the contract was executed, nor have either of them ever had any title to the property legal or equitable.

Now, what is it to which a lien for the money that the plaintiffs had paid would attach? Not to the property, because, at the time the contract was made, neither Lavenberg nor Rubin had any title to or interest in it. The plaintiffs acquired no equitable interest in the property by the contract to which a lien could attach. Subsequently Rubin obtained a contract for the purchase of the property, but that contract was not made with the owner of the property, and there was nothing to show that the person who executed that contract at the time of its execution had any interest in the property. Certainly all that the lien could attach would be to Rubin's interest in the contract with Minsky. That interest in the contract was subject to its performance by Rubin. If Rubin had performed the contract, and obtained title to the land, we may concede that the lien would attach to the land vested in Rubin. But Rubin never did perform, never paid a dollar on account of the contract, and never had any interest in the property. By some transfer, which is not very clearly stated, one Alexander got a right to enforce it. She completed that contract, received a deed of the property, and, on April 5, 1904, conveyed the property to the defendants Pincus Schrank and John O'Brien. Just what relation John O'Brien bore to the property is not clearly disclosed by the record. The only evidence is that Lavenberg who had joined with Schrank in the contract to make the purchase from Rubin directed Cohn the attorney who had charge of the transaction on behalf of Schrank and Lavenberg, to make the deed to O'Brien, which instruction Cohn carried out. It is quite apparent that the consideration for this conveyance from Alexander to Schrank and O'Brien was furnished by the defendants Schrank. If the plaintiffs acquired an equitable lien upon the contract to convey when it was subsequently obtained by Rubin, that contract was subject to the payment by Rubin of the consideration to be paid upon its completion. No equitable lien could attach to the land, because the land was not owned by either of the persons who made the contract with the plaintiff, or, so far as appears, by the person who made the contract with Rubin. The defendants Schrank were not the assignees of that contract, but had an independent contract with Rubin to purchase the property from her. And when the title vested in Alexander, and was by her conveyed to the defendants Schrank and O'Brien, the property had never been in such a relation to Rubin that it could be subject to an equitable lien in favor of the plaintiffs.

The record shows that the defendants Schrank, who have since acquired O'Brien's interest in the property, acted in entire good faith, and paid the entire consideration for the purchase of this property, and there is no equitable reason which would justify subordinating their title to the claim of the plaintiffs. Assuming that they were chargeable with the knowledge that Cohn had of the prior transaction with the plaintiffs, Lavenberg and Rubin, and that Lavenberg had rescinded the contract that he had with Rubin, and was entitled to recover from Rubin the consideration that they had paid to her because of the fact that Schrank had employed Cohn to search the title of the property, this was not notice that the property conveyed by the deed of Alexander

to Schrank and O'Brien was subject to any lien in favor of the plaintiffs. Assuming that Schrank had all of the knowledge that we have now of the condition of this title, he would know that Rubin never had any title to the property, that the conveyance from Alexander vested in him a good title to the property, subject only to the mortgages recited in the conveyance, and upon the faith of that conveyance he paid the money necessary to complete the contract for the purchase of the property, certainly a lien of the plaintiffs would not be superior to a lien of the defendants Schrank for the money that he had actually paid to complete the contract, as any interest that Rubin had in the contract was subject to the payment of the amount that the defendants Schrank paid on the completion of the contract and the plaintiff's lien therefore would be subject to that payment. It does not seem that that precise question has been determined in any of the cases cited by counsel for either side unless it be the case of Carter v. Cook, Wright (Ohio) 443, and that case would seem to be an authority in favor of the appellant.

It is, however, the general rule in courts of equity that such an equitable lien is not favored "as against the general policy of our law, which looks with disfavor on secret interests in real estate, and requires generally that titles to real estate shall be created by some writings which shall be spread upon the public records for the protection of those who might trust to titles apparently sound, but afflicted with secret infirmities. It generally gives way to a legal interest or to a superior equity, and as it is a matter of purely equitable cognizance it should never be enforced when it would be inequitable to do so. Hence, it is never allowed to prevail against one who takes an incumbrance upon the land, or an interest therein, or a conveyance thereof, in good faith without notice of the lien, and for a valuable consideration parted with before such notice." Maroney v. Boyle, 141 N. Y. 462, 36 N. E. 511, 38 Am. St. Rep. 821. Here the defendants Schrank purchased this property without any express notice of any infirmity. They employed a lawyer to examine the title who was recommended to them as a competent attorney for that purpose. They accepted his certificate of title, and, upon the delivery of a deed which conveyed to them a good title to the property, paid the consideration therefor. The only notice they could possibly have charged against them is that an attorney who was examining the title had notice that the plaintiffs made a claim of an equitable lien upon the premises for the return of the money that they paid; but it seems to me that it would be most inequitable to subordinate the title of these appellants to this property which they have purchased in good faith to the plaintiff's claim.

I think, therefore, that the judgment appealed from should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.